IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

SELECT AUTO IMPORTS )
INCORPORATED, )
                       )
      Plaintiff, )
                       )       Case No. 1:15-cv-00679-GBL-JFA
      v. )
                       )
YATES SELECT AUTO SALES, LLC, )
                       )
      Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the two-day non-jury trial of Select Auto Imports,

Incorporated's ("Select Auto Imports") claims against Defendants Yates Select Auto Sales, LLC

and Jeffrey Lee Yates (collectively, "Yates Select Auto Sales") seeking both injunctive relief and

monetary damages for trademark infringement and unfair competition under §§ 32 and 43(a) of

the Federal Trademark Act (the "Lanham Act"), Virginia Code § 59.1-92.12 (the "Virginia

Trademark and Service Mark Act"), Virginia common law, and for trademark cyberpiracy under

Section 43(d) of the Lanham Act.

On November 16, 2015, the Court entered a Stipulation dismissing Defendant Saleiman

Azizi and dismissing the claim for monetary damages (Doc. 31). Plaintiff withdrew its claim for

trademark cyberpiracy (Count III) in its Opposition to Motion for Summary Judgement (Doc.

54). On January 6, 2016, the Court entered a Stipulation dismissing with prejudice Plaintiff's

claims for attorney's fees (Doc. 71). The sole remaining relief sought by Select Auto Imports is a

claim for injunctive relief with respect to claims for federal trademark infringement in violation

of § 32 of the Lanham Act, 15 U.S.C. § 1114 (Count I), unfair competition and false designation

of origin in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count II), trademark

infringement in violation of the Virginia Trademark and Service Mark Act, Virginia Code § 59.1-92.12 (Count IV), and unfair competition and trademark infringement under common law (Count V).

Yates Select Auto Sales does not contest that (1) Select Auto Imports possesses the SELECT AUTO IMPORTS mark, (2) Yates Select Auto Sales used its YATES SELECT AUTO SALES mark, (3) Yates Select Auto Sales's use of its mark occurred "in commerce," or (4) Yates Select Auto Sales used the mark "in connection with the sale, offering for sale, distribution, or advertising" of goods or services. Therefore, the only issue before the Court is whether Select Auto Imports has established that Yates Select Auto Sales used its mark in a manner likely to confuse consumers.

The Court finds that all nine factors in the likelihood of confusion analysis weigh in favor of Plaintiff Select Auto Imports or are neutral to the analysis. Therefore, the Court holds that Defendant Yates Select Auto Sales's use of a confusingly similar mark in connection with similar goods and services is likely to cause confusion among consumers as to the source of Yates Select Auto Sales's goods and services. Thus, the Court holds that Plaintiff Select Auto Imports is entitled to a permanent injunction, requiring Yates Select Auto Sales to cease and desist all use of the YATES SELECT AUTO SALES mark and any other mark confusingly similar to SELECT AUTO IMPORTS.

## I.  STANDARD OF REVIEW

In a non-jury case, the court must make specific findings of fact and separately state its conclusions of law. Fed. R. Civ. P. 52(a)(1). The trial judge has the function of finding the facts, weighing the evidence, and choosing from among conflicting inferences and conclusions those which he considers most reasonable. *Penn-Texas Corp. v. Morse*, 242 F.2d 243, 247 (7th

Cir. 1957) (citation and internal quotation marks omitted). The trial judge has the inherent right to disregard testimony of any witness when satisfied that the witness is not telling the truth, or the testimony is inherently improbable due to inaccuracy, uncertainty, interest, or bias. *Id.* (citation and internal quotation marks omitted); *see Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 56 F.3d 556, 567 (4th Cir. 1995) (internal quotation omitted) (stating that the fact finder is in a better position to make judgments about the reliability of some forms of evidence, including evaluation of the credibility of witnesses). It is the duty of the trial judge sitting without a jury to appraise the testimony and demeanor of witnesses. *See Burgess v. Farrell Lines, Inc.*, 335 F.2d 885, 889 (4th Cir. 1964).

To satisfy the demands of Rule 52(a), a trial court must do more than announce statements of ultimate fact. *United States ex rel. Belcon, Inc. v. Sherman Constr. Co.*, 800 F.2d 1321, 1324 (4th Cir. 1986) (citation omitted). The court must support its rulings by spelling out the subordinate facts on which it relies. *Id.*

The language of Rule 52 has been construed,

> not to require a court to make findings on all facts presented or to make detailed evidentiary findings; if the findings are sufficient to support the ultimate conclusion of the court they are sufficient. Nor is it necessary that the trial court make findings asserting the negative of each issue of fact raised. It is sufficient if the special affirmative facts found by the court, construed as a whole, negative each rejected contention. The ultimate test as to the adequacy of the findings will always be whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision and whether they are supported by the evidence.

*Darter v. Greenville Cmty. Hotel Corp.*, 301 F.2d 70, 75 (4th Cir. 1962). This rule does not require that the trial court set out findings on the myriad of factual questions that arise in a case. *Golf City, Inc. v. Wilson Sporting Goods*, 555 F.2d 426, 433 (5th Cir. 1977). The sufficiency of the trial court's findings depends upon the particular facts of each individual case, and no general rule can govern. *Darter*, 301 F.2d at 75.

## II. FINDINGS OF FACT

The following are findings of fact made by the Court after having had an opportunity to observe the witnesses, consider the evidence, and weigh the demeanor and credibility of the witnesses.

### A. The Parties

Plaintiff Select Auto Imports is a Virginia corporation, located at 5630 S. Van Dorn Street, Alexandria, Virginia 22310. Plaintiff operates a used car dealership on this property (Doc. 88 at ¶ 1).

Defendant Yates Select Auto Sales LLC is a limited liability company organized under the laws of Virginia, located at 3030 Duke Street, Alexandria, Virginia 22314 (Doc. 88 at ¶ 6). Defendants Yates Select Auto Sales and Mr. Yates operate a used car dealership on the 3030 Duke Street property, less than four miles away from Select Auto Imports's dealership. Defendant Jeffrey Lee Yates is the organizer of Yates Select Auto Sales, LLC (Doc. 88 at ¶ 7).

### B. Select Auto Imports and its Valuable SELECT AUTO IMPORTS Mark

Select Auto Imports has substantially and continuously used the mark SELECT AUTO IMPORTS in connection with its used car dealership located at 5630 S. Van Dorn Street since at least 1987 (Pl.'s Ex. 1, 6). Before Select Auto Imports adopted the SELECT AUTO IMPORTS mark, it asked an attorney to investigate whether there were any active used car dealerships in the Washington, D.C. metropolitan area using the term "Select" in their names (Trial Tr., 32, Feb. 22, 2016, a.m. session). The investigation uncovered no such businesses. *Id.*

Select Auto Imports owns the valid active federal trademark Registration No. 2,567,206 on the Principal Register for the mark SELECT AUTO IMPORTS covering an "automobile dealership" (registered on May 7, 2002), depicted in the image below:



*See* Pl.'s Ex. at 1.   Registration No. 2,567,206 includes a disclaimer for the phrase "Auto Imports." *Id.* Registration No. 2,567,206 became incontestable on March 19, 2013 (Doc. 11-B).

Since its inception, Select Auto Imports has promoted its used car dealership under the SELECT AUTO IMPORTS mark, including more recently on its website at www.selectautoimports.com (Doc. 88 at ¶ 5).   The logo in the homepage banner on Select Auto Imports's website is a variation of the above logo and appears as follows:

**SELECT AUTO** *imports*

*Id.* Select Auto Imports sells approximately fifty cars per month (Trial Tr., 78, Feb. 23, 2016).

### C.   Yates Select Auto Sales and its YATES SELECT AUTO SALES Mark

In or around October 2014, Defendant Jeffrey Lee Yates acquired the used car dealership at 3030 Duke Street, Alexandria, Virginia 22314, known at the time as Alexandria Motors, as well as Alexandria Motors's inventory (Doc. 88 at ¶ 9).   Mr. Yates chose to begin the name of his new business with the word "Yates" because "Yates" is a family house mark that has been used since 1962 in connection with numerous automotive and other companies in the Alexandria area (Trial Tr., 77, Feb. 22, 2016, p.m. session).   The Yates name and family house mark is currently or has been used previously by Mr. Yates or by Mr. Yates' family members in connection with at least the following businesses: Yates Automotive, Yates Car Care, Yates Car

Wash & Detail Center, Yates Kingstowne Car Wash & Convenience, Yates Express Lube, Yates Auto Parts, Yates Old Town Auto Body, Yates Automotive Service Garage, Yates Corner, Yates Dry Cleaning & Laundry Services, Yates Pizza Palace, and Yates Real Estate (Doc. 88 at ¶ 12).

Before October 2014, neither Mr. Yates nor anyone else in the Yates family was in the business of selling cars (Trial Tr., 43-44, Feb. 22, 2016, p.m. session). On October 10, 2014, Mr. Yates registered the name Yates Select Auto Sales, LLC with the Commonwealth of Virginia State Corporation Commission (Doc. 88 at ¶ 11). Mr. Yates has not sought registration of the YATES SELECT AUTO SALES mark with the United States Patent and Trademark Office ("USPTO") (Trial Tr., 56, Feb. 22, 2016, p.m. session).

Mr. Yates testified that he chose to use the word "Select" because it would indicate to customers that the automobiles being sold were "selected" by Yates trained staff, and since Yates is a known professional in the automotive industry, customers would see quality associated with the selected vehicles (Trial Tr., 68-69, Feb. 22, 2016, p.m. session). Mr. Yates testified that he did not choose the name Yates Select Auto Sales in an effort to copy or imitate the Select Auto Imports name. *Id.* at 70. Mr. Yates had knowledge of Select Auto Imports, and his personal impression of Select Auto Imports was favorable based on his experience of purchasing a vehicle from Select Auto Imports many years ago. *Id.* at 70-71.

In January 2014, Maria Kyriacou of Commercial Art, L.L.C. drafted a series of logo concepts for potential use by Yates Select Auto Sales at the direction of Mr. Yates, and Mr. Yates requested that Ms. Kyriacou create a logo similar to various other Yates family logos (Def's Ex. 3(b)-(j)). The logos are in fact very similar to other logos used in Yates family businesses (Def's Ex. 5).

Ms. Kyriacou drafted similar logos for potential use in connection with some of Mr. Yates' other businesses, including Yates Select Real Estate, Yates Car Wash Detail Center, Yates Business Enterprises, and Yates Automotive and Detail Center (Def's Ex. 3(a), (k)). Yates Select Auto Sales uses the same or similar logos on hats, shirts, stationary, and on the web (Def's Ex. 4). "Yates Select" is the dominant element of Yates Select Auto Sales (Doc. 15 at ¶ 19).

On February 3, 2015, before Yates Select Auto Sales began using the YATES SELECT AUTO SALES mark in commerce, Dunner Law PLLC, acting on behalf of Select Auto Imports, sent Yates Select Auto Sales a cease and desist letter advising that its YATES SELECT AUTO SALES mark infringes the SELECT AUTO IMPORTS mark (Trial Tr., 10-11, Feb. 22, 2016, p.m. session). Yates Select Auto Sales failed to heed Select Auto Imports's warning and began using the YATES SELECT AUTO SALES mark in connection with the sale of used automobiles similar to those sold by Select Auto Imports in late February 2015. *Id.* at 74.

On February 26, 2015, Mr. Azizi, who by this time had become the general manager of Yates Select Auto Sales, registered the domain name address www.yatesselectautosales.com (Doc. 88 at ¶ 16). That same day, Mr. Azizi asked AutoRevo, the website administrator, to move Yates Select Auto Sales's website to this new domain address and to change the name of the business on the website from "Alexandria Motors" to "Yates Select Auto Sales" with the simple instruction to make the new name "fit nicely" in the banner. *Id.* at ¶ 17; Def's Ex. 6.

Prior to the name change from Alexandria Motors to Yates Select Auto Sales, the homepage banner on the Alexandria Motors website appeared as follows:



Doc. 88 at ¶ 18.  After this change in name, from around or on March 2, 2015 until October 27, 2105, the logo on the www.yatesselectautosales.com website appeared as follows:[1]



*Id.* at ¶ 19.  Mr. Yates had not seen this banner before his deposition in October, 2015 (Trial Tr., 73, Feb. 22, 2016, p.m. session).  When he saw the banner, he did not like it and instructed that the banner be removed.  *Id.*  The new banner was created by Auto Revo, the website host, with the instruction to remove the "A" from the old banner, and "make it fit nicely" (Def's Ex. 6).  Yates Select Auto Sales has now withdrawn this homepage banner.  (Trial Tr., 73, Feb. 22, 2016, p.m. session).

Shortly after the name on the website had been changed, the dealership located at 3030 Duke Street changed its signage from Alexandria Motors to Yates Select Auto Sales (Doc. 88 at ¶ 19).  Over the following weeks, Select Auto Imports's lawyers had telephone conversations with Mr. Azizi on March 4, 11, and 16, 2015 and with Mr. Yates on March 16, 2015 (Trial Tr., 12, Feb. 22, 2016, p.m. session).  On March 20, 2105, Select Auto Imports's lawyers sent a second letter to Mr. Yates and Mr. Azizi, but did not receive any response (Pl.'s Ex. 21).  On May 28, 2015, Select Auto Imports filed the complaint in the instant lawsuit against Yates Select Auto Sales, alleging trademark infringement and unfair competition, among other claims (Doc. 1).

---

[1] Yates Select Auto Sales removed this logo from its website after Mr. Yates's deposition on October 27, 2015, but the logo remains in use on the Google+ profile page for Yates Select Auto Sales (Pl.'s Ex. 50).  Mr. Yates's claims never to have seen the original logo on the Yates Select Auto Sales website before October 27 are not credible given that the logo appeared every time a person visited the website, a screenshot of the logo was included in Select Auto Imports's draft complaint attached to the March 20, 2015 letter that Select Auto Imports sent Mr. Yates, which Mr. Yates acknowledges having read, and the logo was included in the Amended Complaint as filed, which Mr. Yates also acknowledges having read.

Yates Select Auto Sales advertises primarily online and by word of mouth, does not advertise via print media, on the radio, or on the television, and does not have physical signs and advertisements in places other than at its car lot (Trial Tr., 103, Feb. 22, 2016, p.m. session). Yates Select Auto Sales sells approximately nine cars per month. *Id.* at 112; Pl.'s Ex. 41.

### D.     The Likelihood of Confusion Factors

The Court's findings of fact with respect to the nine factors used in this Circuit to assess likelihood of confusion, *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009), are as follows:

### 1.     The Strength of the SELECT AUTO IMPORTS Mark

The USPTO registered the SELECT AUTO IMPORTS mark in 2002 without requiring proof of secondary meaning (Pl.'s Ex. 1).  The UPSTO has registered four other trademarks which include "select" in the name (Pl.'s Ex. 99-102).  Select Auto Imports has been operating for nearly three decades, during which time it has pursued other used car dealerships that have sought to use the term "Select" in the Washington, D.C. metropolitan area (Trial Tr., 73, Feb. 22, 2016, a.m. session).

Select Auto Imports has spent more than $6 million on advertising from 2005-2014, including advertising through print, radio, TV, online, and other means such as the scoreboard at the Verizon Center in Washington, D.C. (Pl.'s Ex. 62, 66, 70).  Select Auto Imports has generated over $150 million in revenues in the past five years (Trial Tr., 46, Feb. 22, 2016, a.m. session).

As of the date of trial, Select Auto Imports's Registration No. 2,567,206 was the only active federal trademark registration for a mark containing the terms "Select" and "Auto" with a connection to the sale of used cars (Trial Tr., 19-20, Feb. 22, 2016, p.m. session).  Among the currently active businesses in Virginia, which promote their products via the internet, are

"Virginia Select Auto," physically located in Amherst, Virginia and operating in Charlottesville, Richmond, and Roanoke with the knowledge and consent of Select Auto Imports (Def's Ex. 13(i), 15). The Court notes that these businesses are not located within Plaintiff's geographic market. According to Select Auto Imports, Select Auto Imports and Yates Select Auto Sales are the only car dealerships operating in the Washington, D.C. metropolitan area whose names contain both the terms "Select" and "Auto."

## 2. The Similarity of the Marks

Select Auto Imports uses the SELECT AUTO IMPORTS mark as its primary trademark. Yates Select Auto Sales uses the YATES SELECT AUTO SALES mark as its primary trademark (Doc. 88 at ¶¶ 20-21).

Select Auto Imports sometimes refers to itself as "Select" or "Select Auto" in advertisements, and Select Auto Imports regularly emphasizes the word "Select" in advertisements, including in the following slogan: "Be Selective...Select Quality, Select Value, Select Auto Imports" (Pl.'s Ex. 71-73, 75). Consumers predictably refer to the business as both "Select" and "Select Auto" —not "Imports" (Trial Tr., 73, Feb. 22, 2016, p.m. session). Select Auto Imports's primary logo appears as follows:



Doc. 88 at ¶ 6.

Select Auto Imports also uses variations of the above logo in its advertising materials, including versions of the logo with a black background and red and white text (Pl.'s Ex. 57-59). Yates Select Auto Sales admitted that "Yates Select" is the dominant portion of the YATES

SELECT AUTO SALES mark in its Answer to Select Auto Imports's Amended Complaint (Doc. 15 at ¶ 19).

Yates Select Auto Sales sometimes refers to itself as "Yates Select Auto" in advertisements (Pl.'s Ex. 55, 60). The logo below appeared on Yates Select Auto Sales's website from approximately February 26, 2015 until October 27, 2015:



(Doc. 88 at ¶ 19). As of the time of trial, this logo still appeared online on Yates Select Auto Sales's Google+ profile page (Pl.'s Ex. 56).

The online logo is particularly important because Yates Select Auto Sales advertises and promotes its cars primarily through the Internet (Trial Tr., 96, Feb. 22, 2016, p.m. session). The logo on the signage outside Yates Select Auto Sales's dealership appears as follows:



(Doc. 88 at ¶ 40).

### 3.   The Similarity of the Goods and Services

Both Select Auto Imports and Yates Select Auto Sales sell used cars, including domestic and imported cars (Trial Tr., 42, Feb. 22, 2016, a.m. session and 120, p.m. session). Specifically, since March 2015, Yates Select Auto Sales and Select Auto Imports have both sold the following makes of car: Mercedes-Benz, BMW, Audi, Infiniti, Land Rover, Porsche, Lexus, Acura, Toyota, Volvo, Honda, Nissan, Chrysler, Volkswagen, Mini Cooper, Chevrolet, and Cadillac (Pl.'s Ex. 41-42).

Of the 67 cars that Yates Select Auto Sales sold from March 2015 thru September 2015, fifty were imports, and more than half were what are generally considered luxury cars (*i.e.*, Mercedes-Benz, BMW, Audi, Land Rover, Porsche, Infiniti, Acura, Lexus, Cadillac, and Lincoln) (Pl.'s Ex. 41). Yates Select Auto Sales sells more Mercedes-Benz than any other make of car. *Id*; Trial Tr., 115, Feb. 22, 2016, p.m. session. Mercedes-Benz is one of the top two makes of cars sold by Select Auto Imports (Trial Tr., 115, Feb. 22, 2016, p.m. session).

Both Select Auto Imports and Yates Select Auto Sales have (1) sold cars for nominal amounts such as $1,000 and for larger amounts such as $50,000, (2) sold cars that are less than a year old and cars that are as old as six years or more, and (3) sold cars with less than 10,000 miles and cars with high mileage, such as 70,000 miles or more (Pl.'s Ex. 41-42; Trial Tr., 118-19, Feb. 22, 2016, p.m. session).

Yates Select Auto Sales has explored the possibility of expanding operations to additional dealership locations in the Alexandria area. Although both parties sell cars to out-of-state customers, the overwhelming majority of their sales are to customers who come from the Washington, D.C. metropolitan area (Trial Tr., 64-65, Feb. 22, 2016, a.m. session and 120, p.m. session).

### 4.   The Similarity of the Facilities

Both Select Auto Imports and Yates Select Auto Sales sell used cars to the general public, have parking lots where the used cars are displayed for sale, and have offices where sale transactions are conducted (Trial Tr., 29, Feb. 22, 2016 a.m. session and 120, p.m. session).

### 5.   The Similarity of Advertising

Select Auto Imports advertises through a range of channels, including the following: (1) its own website; (2) Google+; (3) Twitter; (4) Facebook; (5) a blog; (5) store signage; and (6) merchandise, such as polo shirts and hats (Pl.'s Ex. 57-59, 62-64). Yates Select Auto Sales

advertises through the following channels: (1) its own website; (2) Google+; (3) Twitter; (4) Facebook; (5) a blog; (5) store signage; and (6) merchandise, such as polo shirts and hats (Pl.'s Ex. 53-56, 60).

### 6. Yates Select Auto Sales's Intent

Mr. Yates knew of Select Auto Imports's existence before choosing the mark YATES SELECT AUTO SALES. Among other things, he had bought a car directly from Select Auto Imports. Mr. Yates testified that had Select Auto Imports been located right next door and had a poor reputation, he would not have renamed his company "Yates Select Auto Sales" (Trial Tr., 50-51, Feb. 22, 2016, p.m. session). The Court is not persuaded by Mr. Yates's testimony that he chose "Select" because he remembered that term as it related to Safeway grocery stores' meat products known as "Safeway Select meats." *Id.* at 51.

### 7. Actual Confusion

There are at least three documented instances of actual consumer confusion. In late summer 2015, a woman told the owner of Select Auto Imports, Mike Hajimohammad, that her cousin had suggested that she buy a car from "Select" in Alexandria. Following this suggestion, she went to Yates Select Auto Sales and bought a car with which she was unhappy. When the woman told her cousin about her unhappiness, he suggested that she call Mr. Hajimohammad to see if he could remedy the situation. The woman called Yates Select Auto Sales and asked for "Mike," but was told that no "Mike" worked there. The woman then spoke again to her cousin, who gave her the number for Select Auto Imports. During the phone conversation with Select Auto Imports, the woman told Mr. Hajimohammad that the car was having problems and asked him to fix it, but Mr. Hajimohammad explained that Select Auto Imports is not associated with Yates Select Auto Sales (Trial Tr., 78-79, Feb. 22, 2016, a.m. session, and 1-4, p.m. session).

In July 2015, a customer came to Select Auto Imports looking for a 2006 Mercedes GL550. A Select Auto Imports salesperson, Christopher Venus, told the customer that Select Auto Imports did not have that car in stock (Trial Tr., 41-44, Feb. 23, 2016). The customer then mentioned that he may have seen the car was available at Select Auto Imports's "other location" on Duke Street. *Id.*

In December 2015, a mother and daughter came to Select Auto Imports looking for a Lexus GS550 that they had seen on Cars.com but that was not in Select Auto Imports's inventory (Trial Tr., 17-22, Feb. 23, 2016). During a conversation with Select Auto Imports's sales manager, Mehrdad Samereie, the mother and daughter subsequently confirmed that the car was being sold by Yates Select Auto Sales and expressed surprise that Select Auto Imports and Yates Select Auto Sales are not affiliated. *Id.*

### 8. The Quality of Yates Select Auto Sales's Product

Select Auto Imports inspects every car it sells and will not sell a car with frame damage or body panel replacements (Trial Tr., 43, Feb. 22, 2016, a.m. session). Yates Select Auto Sales sells cars in every condition (Trial Tr., 121, Feb. 22, 2016, p.m. session).

### 9. Sophistication of Consuming Public

The relevant consumers for both Select Auto Imports and Yates Select Auto Sales consist of the public at-large. Although some car buyers may possess expertise regarding used cars, many do not (Trial Tr., 120, Feb. 22, 2016, p.m. session).

## III.   CONCLUSIONS OF LAW

### A.   Jurisdiction and Venue

This Court has jurisdiction over the subject matter of this action under 15 U.S.C. §§ 1121, and under 28 U.S.C. §§ 1331, 1337, and 1338. This Court has jurisdiction over Plaintiff's state law claims under 28 U.S.C. §§ 1338(b) and 1367(a), as well as under general principles of

supplemental and pendent jurisdiction. Each Defendant is located in this district, and the claims arose in this district. Venue is proper under 28 U.S.C. § 1391 (b)-(d).

## B.     Trademark Infringement and False Designation of Origin

The Court finds that all nine factors in the likelihood of confusion analysis weigh in favor of Plaintiff Select Auto Imports or are neutral to the analysis. Therefore, the Court holds that Defendant Yates Select Auto Sales's use of a confusingly similar mark in connection with similar goods and services is likely to cause confusion among consumers as to the source of Yates Select Auto Sales's goods and services. Thus, the Court holds that Plaintiff Select Auto Imports is entitled to a permanent injunction, requiring Yates Select Auto Sales to cease and desist all use of the YATES SELECT AUTO SALES mark and any other mark confusingly similar to SELECT AUTO IMPORTS.

To prevail on a trademark infringement claim or a false designation of origin claim, the trademark holder must prove "(1) that it possesses a mark; (2) that the [opposing party] used the mark; (3) that the [opposing party's] use of the mark occurred 'in commerce'; (4) that the [opposing party] used the mark 'in connection with the sale, offering for sale, distribution, or advertising' of goods or services; and (5) that the [opposing party] used the mark in a manner likely to confuse consumers." *Lamparello v. Falwell*, 420 F.3d 309, 313 (4th Cir. 2005).

Because Yates Select Auto Sales does not contest that (1) Select Auto Imports possesses the SELECT AUTO IMPORTS mark, (2) Yates Select Auto Sales used its YATES SELECT AUTO SALES mark, (3) Yates Select Auto Sales's use of its mark occurred "in commerce," or that (4) Yates Select Auto Sales used the mark "in connection with the sale, offering for sale, distribution, or advertising" of goods or services, Select Auto Imports need only establish that Yates Select Auto Sales used its mark in a manner likely to confuse consumers (Doc. 88).

As noted, in the Fourth Circuit, there are nine factors in a likelihood of confusion analysis: "(1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public." *George & Co. LLC*, 575 F.3d at 393. No single factor is dispositive, and "there is no need for each factor to support [the plaintiff's] position." *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 171 (4th Cir. 2006); *see also Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008) ("[A] finding of a likelihood of confusion need not be supported by a majority of the factors.").

## 1.    The Strength of the SELECT AUTO IMPORTS Mark

In the Fourth Circuit, courts often consider both the conceptual strength and commercial strength of a mark. *George & Co. LLC*, 575 F.3d at 393-96. Conceptual strength is typically divided into five categories, which are given varying levels of protection based on the mark's distinctiveness: (1) fanciful; (2) arbitrary; (3) suggestive; (4) descriptive; and (5) generic.[2] *See id.*

Commercial strength, on the other hand, considers the mark's strength in the marketplace and essentially mimics the inquiry into whether a descriptive mark has acquired secondary meaning, *i.e.*, that "in the minds of the public, the primary significance of a product feature or

---

[2] Fanciful, arbitrary, and suggestive marks are all deemed to be inherently distinctive and thus given the greatest protection. *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 464 (4th Cir. 1996). Descriptive marks are not inherently distinctive and are therefore protected only if they have acquired secondary meaning. *Id.* Finally, generic marks are the common names of products or services that never receive trademark protection. *Id.*

term is to identify the source of the product rather than the product itself." *See Sara Lee*, 81 F.3d at 464.

Here, the USPTO's registration of the SELECT AUTO IMPORTS mark without requiring proof of secondary meaning reflects a determination that the mark is inherently distinctive (*i.e.*, at least suggestive) and is therefore "powerful evidence that the registered mark is suggestive and not merely descriptive." *U.S. Search, LLC v. U.S. Search.com Inc.*, 300 F.3d 517, 524 (4th Cir. 2002); *see also Teaching Co. Ltd. P'ship v. Unapix Entm't, Inc.*, 87 F. Supp. 2d 567, 578 (E.D. Va. 2000).

Because the USPTO requested that Select Auto Imports disclaim the phrase "Auto Imports" and not "Select," the portion of the mark that the USPTO concluded is suggestive and not merely descriptive must be "Select."   *See* Trademark Manual of Examining Procedure ("TMEP") § 1213 (USPTO "may require the applicant to disclaim an unregistrable component of a mark otherwise registrable").

The USPTO's determination on the SELECT AUTO IMPORTS mark is not an anomaly. The USPTO has registered four marks for the term "Select" *on its own* covering goods and services related to automobiles:   SELECT covering "automobile inspection services, namely inspection of used automobiles to assess condition prior to resale" (Reg. No. 2,033,899); SELECT covering "automobile tires and tubes" (Reg. No. 2,769,444); SELECT covering "automotive accessories, namely, seat covers" (Reg. No. 2,156,378); and SELECT covering "automotive ignition components, namely contact sets, condensers, distribution caps, and rotors" (Reg. No. 1,632,919)[3] (Pl.'s Ex. 99-102). These registrations demonstrate that the USPTO views the term "Select" as suggestive in these contexts.

---

[3] Moreover, in none of these applications did the USPTO require proof of secondary meaning.

The USPTO's determinations on such matters are entitled to deference. *Synergistic Int'l*, 470 F.3d at 172 ("[W]e are obliged to defer to the determination of the PTO, which constitutes prima facie evidence of whether the mark is descriptive or suggestive.") (internal quotations and citation omitted).

It is clear, in any event, that "Select" is suggestive because the term "connote[s] some quality, ingredient, or characteristic of a product" and does not "go as far as describing the product." *Teaching Co. Ltd. P'ship*, 87 F. Supp. 2d at 576. In contrast, a descriptive mark describes the "intended purpose, function, size, desirable characteristic, use, or the nature of the product, or the class of users or end effect upon the user." *Id.*

The distinction between a suggestive mark and a descriptive mark is important for the likelihood of confusion analysis because it determines the extent to which the mark should be protected:

> [A] suggestive mark will ordinarily be protected against the use of the same or a confusingly similar mark on the same product, or related products, and even on those which may be considered by some to be unrelated but which the public is likely to assume emanate from the trade mark owner.

*Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984) (internal quotations and citation omitted). In other words, if a "mark is sufficiently strong [*i.e.*, suggestive], it will preclude its use in not only directly competitive products, but closely related ones as well." *Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*, 405 F. Supp. 2d 680, 695 (E.D. Va. 2005) *aff'd*, 227 F. App'x 239 (4th Cir. 2007); *see also Teaching Co. Ltd. P'ship*, 87 F. Supp. 2d at 581 ("Suggestive marks are considered to be strong and entitled to the greatest protection against infringement."). Accordingly, because SELECT AUTO IMPORTS is suggestive, as the USPTO determined, the Court holds that it is entitled to protection against used car dealerships.

Even if the SELECT AUTO IMPORTS mark is descriptive, the mark has acquired secondary meaning, thereby precluding another entity from using the mark on "directly competitive" products like those of Yates Select Auto Sales. *Cf. Renaissance Greeting Cards*, 405 F. Supp. 2d at 694-95 (Even though "the RENAISSANCE mark is a weak mark," it nonetheless "identif[ies] the source of products [within] the greeting card market.").

Secondary meaning (and thereby commercial strength) can be shown through, among other things, length and exclusivity of the mark's use, advertising expenditures, and sales success. *See, e.g.*, *Teaching Co. Ltd. P'ship*, 87 F. Supp. 2d at 579-81 ($11 million in advertising and $6 million in sales over an eight-year period weighed toward finding secondary meaning); *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, No. 5:14-CV-217-BO, 2015 WL 8975616, at *4 (E.D.N.C. Dec. 8, 2015) (finding that evidence of these three factors sufficient to determine that mark was commercially strong).

Here, Select Auto Imports has exclusively used the mark for nearly three decades in the Washington, D.C. metropolitan area, has spent millions on advertising, and has enjoyed commercial success. Therefore, Select Auto Imports has demonstrated acquisition of secondary meaning and that its mark is commercially strong.

This conclusion is unaffected by third-party use of marks containing the term "Select," as shown by trademark registrations or state business registrations. Without evidence as to the extent of actual day-to-day use of such marks, the probative value of such evidence is minimal. *Han Beauty, Inc. v. Alberto-Culver Co.*, 236 F.3d 1333, 1338 (Fed. Cir. 2001); *see also Scarves by Vera, Inc. v. Todo Imports Ltd. (Inc.)*, 544 F.2d 1167, 1173 (2d Cir. 1976) ("The significance of third-party trademarks depends wholly upon their usage."). The mere existence of marks "is

not evidence of what happens in the marketplace or that customers are familiar with them." *See Nike, Inc. v. WNBA Enters., LLC*, 85 U.S.P.Q.2d 1187 (TTAB 2007).

Similarly, this conclusion is unaffected by the existence of other businesses using the term "Select" outside the Washington, D.C. metropolitan area and Select Auto Imports's decision not to pursue these businesses. In discovery, Select Auto Imports produced examples of over 25 businesses throughout the nation, all of which promote their products via the internet and use such terms in connection with the sale and service of automobiles (Def's Ex. 14). A basic Google search using the term "select auto" reveals many more such businesses. Not only is there extensive nationwide use of such terms, but there are numerous businesses throughout Virginia and Maryland, as well as federally registered trademarks, that use, or have used in the past, such terms (Def's Ex. 13). Among the currently active businesses in Virginia, which also promote their products via the internet, are "Virginia Select Auto," physically located in Amherst, Virginia and operating in Charlottesville, Richmond, and Roanoke with the knowledge and consent of Select Auto Imports. Additionally, Select Automotive, Select Imports, and Select Auto Outlet, are physically located and operate in Virginia Beach, Virginia. Select Imports was founded in 1983. The owner of Select Auto Imports, Mike Hajimohammad, acknowledges that despite his knowledge of extensive, nationwide use, Select Auto Imports has failed to challenge such use. Select Auto Imports's claim, however, is focused on the use of "select" and "auto" within the Washington, D.C. metropolitan area. Yates Select Auto's argument to the contrary is not relevant to this analysis. *See Sara Lee*, 81 F.3d at 461 (stating that the owner of a trademark "has no obligation to sue [third parties] until the likelihood of confusion looms large."); *see also What-A-Burger of Virginia, Inc. v. Whataburger, Inc. of Corpus Christi, Texas*, 357 F.3d 441, 448-52 (4th Cir. 2004) (finding that a Texas trademark owner's knowledge of Virginia business

32 years before lawsuit did not warrant application of laches or acquiescence because Texas owner was not doing business in Virginia). Although a federal trademark registration provides a nationwide "presumption of priority," injunctive relief for the senior user is appropriate only "in those areas where the senior user can show sufficient actual use." *Emergency One, Inc. v. Am. Fire Eagle Engine Co.,* 332 F.3d 264, 268-69 (4th Cir. 2003). Because the vast majority of Select Auto Imports's business comes from the Washington, D.C. metropolitan area, and because Select Auto Imports's only service is the sale of used cars, it has no reason—indeed, no grounds—to pursue businesses that operate outside its market or that sell unrelated goods.

The Court finds that the SELECT AUTO IMPORTS mark is suggestive, or at least descriptive with secondary meaning, and is commercially strong. Therefore, the Court holds that this factor weighs in favor of Select Auto Imports.

### 2. The Similarity of the Marks

In determining whether two marks are similar, the Fourth Circuit focuses "on whether there exists a similarity in sight, sound, and meaning." *George & Co.*, 575 F.3d at 396.

Here, the SELECT AUTO IMPORTS and YATES SELECT AUTO SALES marks are similar in all three aspects: sight; sound; and meaning. The marks are similar in sight and sound because they contain two identical words—"Select" and "Auto"—and they are similar in meaning because the terms "Select" and "Auto" have the same connotation in both marks (in addition, "Imports" is effectively a subset of "Sales").

Moreover, Select Auto Imports's logo and Yates Select Auto Sales's original online logo are essentially mirror images of one another, further increasing the similarity between the marks:

 

Select Auto Imports's logo is comprised of two lines of text:  the top line is in uppercase print, and the bottom line is in lowercase cursive.  Yates Select Auto Sales's logo has the same composition, but reversed.  The colors in the two logos are also the same—red, black, and white/gray.  The similarity between these two logos is particularly troubling given that the "junior user of a mark has an affirmative duty to select a mark that is not confusing," *Teaching Co. Ltd. P'ship*, 87 F. Supp. 2d at 583 (citing 3 Thomas J. McCarthy on Trademarks and Unfair Competition § 23-65), and that Yates Select Auto Sales advertises primarily online.

The similarity between the SELECT AUTO IMPORTS and YATES SELECT AUTO SALES marks also becomes even more apparent when one considers the dominant portions of each mark: "Select" for SELECT AUTO IMPORTS and "Yates Select" for YATES SELECT AUTO SALES.

The term "Select" is the dominant element of the SELECT AUTO IMPORTS mark because Select Auto regularly emphasizes the word "Select" in advertisements, because consumers predictably refer to the business as both "Select" and "Select Auto," and because "Auto Imports" is disclaimed in the federal trademark registration for the mark.  *See Celanese Corp. of Am. v. E.I. Du Pont De Nemours & Co.*, 154 F.2d 143, 145 (C.C.P.A. 1946) (dominant portion is that which consumers would "be likely to remember and use . . . as indicating origin of the goods," even if another part of the mark is more "conspicuous"); *see also Pizzeria Uno*, 747 F.2d at 1529-30 ("Where the proposed mark consists of but two words, one of which is disclaimed, the word not disclaimed is generally regarded as the dominant or critical term.").

The terms "Yates" and "Select" are the dominant elements of the YATES SELECT AUTO IMPORTS mark, as Yates Select Auto Sales admits in its Answer (Doc. 15 at ¶ 19), because consumers refer to the business as "Yates Select," and because Yates Select Auto Sales

emphasizes both "Yates" and "Select" in its advertising.  For example, in the Yates Select Auto

Sales's online logo above, "Select" is equally prominent to "Yates."  And in Yates Select Auto

Sales's sign logo, both "Yates" and "Select" are offset from the other words in the mark by use

of the oval, colors, and font:



Courts are particularly inclined to find similarity when there is overlap in the marks'

dominant terms, even if the marks contain other dissimilar words.  *See, e.g.*, *Lone Star*

*Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 936 (4th Cir. 1995) (finding

the LONE STAR GRILL mark sufficiently similar to LONE STAR STEAKHOUSE &

SALOON mark); *Pizzeria Uno*, 747 F.2d at 1534-35 (finding the TACO UNO mark sufficiently

similar to PIZZERIA UNO mark); *Sweetwater Brewing Co., LLC v. Great Am. Restaurants, Inc.*,

266 F. Supp. 2d 457, 462-63 (E.D. Va. 2003) (finding the SWEETWATER TAVERN mark

sufficiently similar to SWEETWATER BREWING COMPANY mark); *Teaching Co. Ltd.*

*P'ship*, 87 F. Supp. 2d at 581-82 (finding the GREAT MINDS OF MEDICINE mark "extremely

similar" to GREAT MINDS OF THE WESTERN INTELLECTUAL TRADITION mark); *see*

*also Variety Stores*, 2015 WL 8975616, at *4 ("Evaluating the dominant word in each mark is

proper, as the Fourth Circuit has reasoned that the marks need only be sufficiently similar in

appearance, with greater weight given to the dominant or salient portions of the marks.")

(internal quotations and citation omitted).

The addition of a house mark "to one of two otherwise similar marks will not serve to

avoid a likelihood of confusion." *Nike, Inc.*, 85 U.S.P.Q.2d 1187; *see also In Re Fiesta Palms,*

*LLC*, 85 U.S.P.Q.2d 1360 (TTAB 2007) (finding that CLUB PALMS MVP confusingly similar

to MVP); *Decatur Fed. Sav. & Loan Ass'n v. Peach State Fed. Sav. & Loan Ass'n*, No. C-78-904-A, 1978 WL 21348, at *8 (N.D. Ga. Dec. 29, 1978) (finding that DECATUR FEDERAL SAVINGS SHOP confusingly similar to THE SAVINGS SPOT); *Frostig v. Saga Enters., Inc.*, 272 Or. 565, 568 (1975) (finding that STUART ANDERSON'S BLACK ANGUS RESTAURANT confusingly similar to BLACK ANGUS STEAKHOUSE).

To the contrary, addition of a house mark can aggravate, rather than mitigate confusion, for as the Supreme Court has explained, it is "openly trading in the name of another upon the reputation acquired by the device of the true proprietor." *Menendez v. Holt*, 128 U.S. 514, 521 (1888); *accord A. T. Cross Co. v. Jonathan Bradley Pens, Inc.*, 470 F.2d 689, 692 (2d Cir. 1972) ("[A] purchaser could well think plaintiff had licensed defendant as a second user.").

The Court finds that the SELECT AUTO IMPORTS and YATES SELECT AUTO SALES marks are similar. Thus, this factor weighs in favor of Select Auto.

### 3.   The Similarity of the Goods and Services

Select Auto Imports and Yates Select Auto Sales not only both sell used cars exclusively, they sell many of the same brands of cars, including Mercedes-Benz, BMW, Audi, Infiniti, Land Rover, Porsche, Lexus, Acura, Toyota, Volvo, Honda, Nissan, Chrysler, Volkswagen, Mini Cooper, Chevrolet, and Cadillac.

Importantly, most of the cars sold by both dealerships are luxury imports, with Mercedes-Benz notably being a top-seller for both. There is thus significant overlap in the goods offered by both businesses. *See Variety Stores*, 2015 WL 8975616, at *4 ("line of lawn and garden products, which includes a few charcoal grills and grill accessories," similar to "extensive line of gas and charcoal grills and a few grill accessories" even though lists of goods as whole "do not map onto each other exactly").

But overlap is not even necessary. *See Swatch, S.A. v. Beehive Wholesale, L.L.C.* 888 F. Supp. 2d 738, 751-52 (E.D. Va. 2012), *aff'd sub nom.*, 739 F.3d 150 (4th Cir. 2014). In *Swatch*, the defendant argued that its watches were dissimilar from plaintiff's based in part on the fact that its watches cost only $16-$20, whereas plaintiff's watches cost $50-$250. *Id.* at 752 n. 11. Emphasizing that an "important function of the Court's related goods inquiry is to protect trademark owners' ability to expand into associated markets," the court concluded that the market for each party's goods was "associated," and that this factor thus weighed in favor of the plaintiff. *Id.* (internal quotes and citation omitted). Therefore, not only does the overlap between Select Auto Imports's and Yates Select Auto Sales's inventory support a finding of similarity under this factor, but so does the possibility that this overlap might increase, especially given Yates Select Auto Sales's apparent desire to add more dealership locations in the Alexandria area.

The geographic proximity between Select Auto Imports and Yates Select Auto Sales makes the similarity between their goods even more prominent. In similar circumstances, courts have held that geographic proximity between two businesses can play a significant role in the likelihood of confusion analysis. *See, e.g., Pretty Girl, Inc. v. Pretty Girl Fashions, Inc.*, 778 F. Supp. 2d 261, 268 (E.D.N.Y. 2011) (finding that location of plaintiff's stores "within a few miles" of defendants' increased likelihood of consumer confusion), *abrogated on other grounds by CJ Products LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127 (E.D.N.Y. 2011); *see also Six Flags Great Am., Inc. v. Bailey*, No. 86 C 3892, 1986 WL 6939, at *3 (N.D. Ill. June 9, 1986) (finding that two businesses which were located within 1.5 miles of each other "weigh[ed] heavily in favor of finding a likelihood of confusion").

The Court finds that the goods and services covered by the SELECT AUTO IMPORTS and YATES SELECT AUTO SALES marks are similar; therefore, this factor weighs in favor of Select Auto Imports.

### 4.   The Similarity of the Facilities

With regard to the similarity of the facilities, courts in the Fourth Circuit consider whether the "purposes" of the two businesses are similar. *See, e.g., Teaching Co. Ltd. P'ship*, 87 F. Supp. 2d at 582 ("The Fourth Circuit focuses on whether the goods serve the same purpose and if the purposes are related."). For example, in *Pizzeria Uno*, the court held that an Italian sit-down restaurant and a Mexican fast-food restaurant served the same purpose and therefore had similar facilities. 747 F.2d at 1535.

Geographic proximity of the businesses may weigh toward a finding that facilities are similar. *Variety Stores*, 2015 WL 8975616, at *5. Here, Select Auto Imports and Yates Select Auto Sales both provide customers with means of transportation, namely used cars, and do so within four miles of each other. Moreover, the physical characteristics of the dealerships' facilities are similar—both dealerships consist of a parking lot where cars are displayed as well as an office where transactions are conducted.

The Court finds that Select Auto Imports's and Yates Select Auto Sales's facilities are similar. Therefore, this factor weighs in favor of Select Auto Imports.

### 5.   The Similarity of Advertising

A finding of similarity of advertising requires "some degree of overlap" among the parties' outlets and customer bases, but the two need not be identical. *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1339 (11th Cir. 1999); *see also Fuel Clothing Co. v. Nike, Inc.*, 7 F. Supp. 3d 594, 619 (D.S.C. 2014) (finding similarity of advertising because there was "enough overlap" between demographics targeted).

Here, there is not only "some degree of overlap" but Yates Select Auto Sales's advertising channels are entirely or almost entirely subsumed within Select Auto Imports's advertising channels.   Additionally, the proximity of the dealerships again increases the similarity because the advertisements are targeted to consumers in the same geographic area. *See Pizzeria Uno*, 747 F.2d at 1535.

As noted previously, Select Auto Imports advertises through a range of channels, including the following: (1) its own website; (2) Google+; (3) Twitter; (4) Facebook; (5) a blog; (5) store signage; and (6) merchandise, such as polo shirts and hats (Pl.'s Ex. 57-59, 62-64). Yates Select Auto Sales advertises through the following channels: (1) its own website; (2) Google+; (3) Twitter; (4) Facebook; (5) a blog; (5) store signage; and (6) merchandise, such as polo shirts and hats (Pl.'s Ex. 53-56, 60).   Because Select Auto Imports's and Yates Select Auto Sales's advertising channels are similar, the Court holds that this factor weighs in favor of Select Auto Imports.

### 6.   Yates Select Auto's Intent

Courts have repeatedly inferred bad faith in situations where defendants had prior knowledge of plaintiff's marks and where there was other circumstantial evidence of intent. *See, e.g., Variety Stores*, 2015 WL 8975616, at *5 ("It is difficult to imagine more compelling evidence of intent to confuse than a knowing decision to use a similar mark to sell similar goods."); *Teaching Co. Ltd. P'ship*, 87 F. Supp. 2d at 582-83 ("When a defendant adopts a mark with full knowledge of the plaintiff's mark, intent is inferred."); *see also EndoSurg Med., Inc. v. EndoMaster Med., Inc.*, No. GJH-14-2827, 2014 WL 7336691, at *18 (D. Md. Dec. 19, 2014) (finding intent based in part on "[defendants'] use of the word endo in their name, and their business location on the same block").

Here, Mr. Yates's prior knowledge of Select Auto Imports, the proximity between the Select Auto Imports and Yates Select Auto Sales dealerships, Select Auto Imports's success and reputation, the similarity between the SELECT AUTO IMPORTS and the YATES SELECT AUTO SALES marks, and the use of the marks on similar goods and services all point toward a finding of bad faith intent. Mr. Yate's prior knowledge of Select Auto Imports does demonstrate intent to infringe. Mr. Yates has known about Select Auto Imports for approximately ten years, and had previously purchased a vehicle from Select Auto Imports. In fact, Mr. Yates testified that his impression of Select Auto Imports was favorable based on that experience. It is irrelevant that Mr. Yates had no part in the website development and did not authorize the new logo. As the owner of Yates Select Auto, Mr. Yates is responsible.

Because the Court concludes that Yates Select Auto Sales intended to confuse and deceive the public as to the source of its goods and services, the Court finds that this factor weighs in favor of Select Auto Imports.

Even if the Court were to find that Yates Select Auto Sales did not intentionally choose a confusingly similar name, a "good faith belief that a subsequently-adopted mark will not lead to confusion . . . is no defense." *Pizzeria Uno*, 747 F.2d at 1535; *see also Commc'ns Satellite Corp. v. Comcet, Inc.*, 429 F.2d 1245, 1249 (4th Cir. 1970) ("While evil intent may evidence unfair competition and deception, lack of guile is immaterial.").

### 7. Actual Confusion

Actual confusion is often considered the "best evidence of likely confusion." *Resorts of Pinehurst. Inc. v. Pinehurst Nat'l Corp.*, 148 F.3d 417, 422 (4th Cir. 1998); *see also Lone Star Steakhouse & Saloon*, 43 F.3d at 937 ("[Evidence of actual confusion] is entitled to substantial weight as it provides the most compelling evidence of likelihood of confusion.").

Indeed, actual confusion "is such persuasive evidence of the likelihood of confusion that even a minimal demonstration of actual confusion may be significant." *Copy Cop, Inc. v. Task Printing, Inc.*, 908 F. Supp. 37, 45 (D. Mass. 1995); *see also* 4 McCarthy on Trademarks and Unfair Competition § 23:13 (4th ed.) ("Any evidence of actual confusion is strong proof of the fact of a likelihood of confusion.").

At the same time, it bears emphasis that evidence of actual confusion is not required due in part to the difficulty of obtaining evidence of actual confusion.[4] *See Gen. Mills, Inc. & Gen. Mills IP Holdings II, LLC v. Fage airy Processing Indus. S.A.*, 100 U.S.P.Q.2d (BNA) 1584 (TTAB 2011) ("[E]vidence of actual confusion is notoriously difficult to come by."), *judgment set aside on other grounds, General Mills, Inc. v. Fage Luxembourg S.A.R.L.*, (TTAB 2014).

Since Yates Select Auto Sales began using its YATES SELECT AUTO SALES mark in commerce a year ago, there have been at least three separate instances of actual consumer confusion, including two of "[t]he classic case of direct confusion" where customers wanted "to buy the [plaintiff's] product and because of the similarity of the marks, mistakenly [bought] the [defendant's] product instead." *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013) (internal quotations and citation omitted).

The threshold for evidence of actual confusion is low and typically requires only more than a "handful of people over several years." *See Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*, 868 F. Supp. 2d 468, 488 (D. Md. 2012); *see also Renaissance Greeting Cards*, 405 F. Supp. 2d

---

[4] Actual confusion can be shown through either anecdotal evidence or survey evidence. *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 156 (4th Cir. 2012) ("Both types of evidence [anecdotal and survey] are relevant, and neither category is necessarily required to prove actual confusion."); *Tools USA & Equip. Co. v. Champ Frame Straightening Equip. Inc.*, 87 F.3d 654, 660-61 (4th Cir. 1996) ("Actual confusion can be demonstrated by survey evidence, but contrary to [defendant's] suggestion, survey evidence is not necessarily the best evidence of actual confusion and 'surveys are not required to prove likelihood of confusion.'") (quoting *Woodsmith Publ'g Co. v. Meredith Corp.*, 904 F.2d 1244, 1249 (8th Cir. 1990)).

at 698 (finding four instances over more than ten years *de minimis*, particularly where significant efforts were undertaken to uncover such instances); *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 263 (5th Cir. 1980) (finding three instances in 15 years *de minimis*). Often, when a court finds the number of instances to be insignificant, the instances are contrasted with the number of opportunities for confusion, *see, e.g.*, *George & Co.*, 575 F.3d at 398-99 (finding four instances out of 500,000 annual sales *de minimis*); sometimes, even when there are a large number of opportunities, a small number of instances of actual confusion will suffice. *See, e.g.*, *Inst. for Justice v. Media Group of Am., LLC, & IMGE, LLC*, No. 1:15-CV-1410, 2015 WL 7758845, at *9 (E.D. Va. Nov. 30, 2015) (holding that although defendant receives "over 20 million unique hits on its website every month," eight instances of actual confusion "quite compelling"). Thus, at least three separate instances of consumer confusion over a year when Select Auto Imports sells only approximately 50 cars per month and Yates Select Auto Sales sells only approximately nine cars per month is not *de minimis*.

Because there have already been multiple documented instances of actual confusion over a short time and arising out of a limited number of sales, the Court finds that this factor weighs in favor of Select Auto Imports.

### 8. Sophistication of Consuming Public

The Fourth Circuit has held that "buyer sophistication will only be a key factor when the relevant market is not the public at-large." *Sara Lee*, 81 F.3d at 467 ("If the typical consumer in the relevant market is sophisticated in the use of—or possesses an expertise regarding—a particular product, such sophistication or expertise may be pertinent in determining the likelihood of confusion."); *see also Teaching Co. Ltd. P'ship*, 87 F. Supp. 2d at 585 ("[T]here is no evidence that the consumers [of defendant's and plaintiff's products] are highly-trained professionals or experts in purchasing educational products."). For example, the Fourth Circuit

Court of Appeals found sophistication of the buyer relevant when the market was limited to construction firms because the ordinary consumer was "most likely a highly trained procurement professional whose sensitivity is heightened by the responsibility of sensibly spending millions of dollars." *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 127 (4th Cir. 1990).

In contrast, "given the ubiquity of cars and trucks in our society, it is likely that the sophistication of the consumers will vary widely, and include unsophisticated individuals." *Lee Myles Auto Grp., LLC v. Fiorillo*, No. 10 Civ. 6267 (PKC), 2010 WL 3466687, at *6 (S.D.N.Y. Aug. 25, 2010).

The Court finds that this factor is neutral as the consumers of Select Auto Imports and Yates Select Auto Sales's goods and services are not trained professionals.

## IV.   CONCLUSION

For the foregoing reasons, the Court finds that all the above factors weigh in favor of Plaintiff Select Auto Imports or are neutral to analysis.   Therefore, the Court holds that Defendant Yates Select Auto Sales's use of a confusingly similar mark in connection with similar goods and services is likely to cause confusion among consumers as to the source of Yates Select Auto Sales's goods and services.

In light of the likelihood of confusion in this case, the Court holds that Plaintiff Select Auto Imports is entitled to a permanent injunction, requiring Yates Select Auto Sales to cease and desist all use of the YATES SELECT AUTO SALES mark and any other mark confusingly similar to SELECT AUTO IMPORTS.

Accordingly, **IT IS HEREBY ORDERED** that the Court finds in favor of Plaintiff Select Auto Imports and against Defendant Jeffrey Lee Yates and Yates Select Auto Sales on Counts I, II, IV and V of the Amended Complaint; and

**IT IS FURTHER ORDERED:**

(1)     that Defendants Jeffrey Lee Yates and Yates Select Auto Sales LLC and all persons or entities acting on behalf of, by, through or in concert with Defendants, are hereby permanently enjoined from using any mark or domain name that is confusingly similar to Plaintiff's marks or domain names, including the YATES SELECT AUTO SALES mark and the YATESSELECTAUTOSALES.COM domain name;

(2)     that Defendants destroy all signage, advertisements, and/or any other materials and things in their possession or under their control that contain or bear any mark confusingly similar to Plaintiff's marks, including the YATES SELECT AUTO SALES mark;

(3)     that Defendants amend the Yates Select Auto Sales LLC business registration with the Virginia State Corporation Commission to discontinue use of any mark confusingly similar to Plaintiff's mark, including the YATES SELECT AUTO SALES mark;

**IT IS FURTHER ORDERED** that, within thirty (30) days of entry of the injunction and order, Defendants file with this Court and serve on Plaintiff's attorneys a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the Injunction and Order; and

**IT IS FURTHER ORDERED** that this Court shall have jurisdiction and be the appropriate venue for the enforcement of this Permanent Injunction, and Defendants will be assessed all future costs associated with any enforcement action.

A separate Rule 58 Judgment Order will issue with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

ENTERED this ___7th___ day of July, 2016.

Alexandria, Virginia
7/ 7 / 2016

                                          /s/
                              _____
                              Gerald Bruce Lee
                              United States District Judge